```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JAIME BORROMEO ESCALER              :
                                    :
              Plaintiff,            :
                                    :    03 Civ. 8418 (BSJ)
         v.                         :
                                    :         Order
U.S. CITIZENSHIP & IMMIGRATION      :
SERVICES; EDWARD McELROY, District  :
Director; JOHN ASHCROFT, U.S.       :
Attorney General; and DEPARTMENT OF :
HOMELAND SECURITY,                  :
                                    :
              Defendants.           :
------------------------------------x
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

### INTRODUCTION

Plaintiff Jaime Borromeo Escaler brings this action to compel the Government to issue him a certificate of naturalization, or in the alternative, to adjudicate his naturalization application *nunc pro tunc* to May 18, 1993. Plaintiff has moved for summary judgment.  The Government has cross-moved to dismiss the complaint, or, in the alternative, for summary judgment.  For the reasons below, Plaintiff's motion is DENIED; the Government's motion is GRANTED.

**BACKGROUND**

**A.   Relevant Naturalization Law**

The Constitution grants Congress the power to "establish a[] Uniform Rule of Naturalization." Art. I., § 8, cl. 4. Congress has required, *inter alia*, that applicants for naturalization meet certain residency requirements. As relevant here, 8 U.S.C. § 1427(a) provides that no person shall be naturalized unless that person has resided continuously within the United States from the date of his application through the time of his admission for citizenship. *See* 8 U.S.C. § 1427(a).

An applicant is deemed admitted to citizenship at the conclusion of what has been roughly described as a five stage process. *See, e.g.*, *Langer v. McElroy*, No. 00 Civ. 2741(RWS), 2002 WL 31789757, at *1 (S.D.N.Y. Dec. 13, 2002). First, an applicant must submit application materials to the United States Citizenship and Immigration Service ("CIS").[1] *See* 8 U.S.C. § 1445(a); 8 C.F.R. §§ 316.2, 316.4, 334.1 & 334.2 (2007). Second, the Government conducts an investigation into the applicant's background. *See* 8 U.S.C. § 1446(a); 8 C.F.R. §§ 335.1, 335.2 (2007). Third, CIS tests the applicant for

---

[1] On March 1, 2003, the former Immigration and Naturalization Service ("INS") ceased to exist as an agency within Department of Justice. INS's functions in respect to the adjudication of applications for immigration benefits (including naturalization) were assumed by CIS, which is within the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub.L. 107-292, § 471(a), 116 Stat. 2135, 2205 (Nov. 25, 2002); *see also Brown v. Ashcroft*, 360 F.3d 346, 348 (2d Cir. 2004).

proficiency in the English language and knowledge of United States history and government.  *See* 8 U.S.C. § 1423(a); 8 C.F.R. Pt. 312 (2007).  Fourth, the applicant is examined under oath by a CIS official, who generally is required to grant or deny the application for naturalization within 120 days of the examination.  *See* 8 C.F.R. §§ 316.14, 335.2 (2000).  Finally, if CIS grants the application, the applicant must attend a public oath ceremony –- either before the appropriate district court or authorized agency personnel -– at which the applicant must reaffirm the answers on his naturalization application and swear allegiance to the United States.  *See* 8 U.S.C. § 1448; 8 C.F.R. § 310.3 & Part 337 (2007).[2]  At the completion of the ceremony, the applicant is deemed naturalized and is provided a certificate of naturalization.  *See* 8 U.S.C. § 1443(e); 8 C.F.R. § 338.1 (2007).

By regulation, CIS is authorized under certain circumstances to reopen and reconsider its prior approval of a naturalization application at any time before a naturalization applicant is admitted to citizenship (*i.e.*, prior to completion of the five stages outlined above).  *See* 8 C.F.R. § 334.5(b) (2007).  If CIS denies a naturalization application –- either upon an initial examination or upon reconsideration –- the

---

[2] The content of the oath is fixed by regulation.  *See* 8 C.F.R. § 337.1 (2007).

applicant may take an administrative appeal before a senior naturalization officer.  *See* 8 U.S.C. § 1447(a).

**B.   Plaintiff's Attempt to Naturalize**

Plaintiff filed his application for naturalization on March 31, 1993.  On May 18, 1993, Plaintiff was examined by the former INS (now CIS, *see supra* n.1).  On the date of his interview, Plaintiff passed his proficiency examination, was deemed to satisfy the residency and all other requirements, and his application was approved.[3]  Plaintiff also executed a written oath of allegiance to the United States, although it is not clear from the record exactly when or under what circumstances the oath was signed.[4]  Shortly after his naturalization application was approved, Plaintiff departed the United States and remained abroad for a year or more.  CIS does not appear to have scheduled Plaintiff to take an oath of renunciation and allegiance in a public ceremony,[5] and Plaintiff does not contend that he attended any such ceremony.  Rather, Plaintiff claims that his execution of the written oath of allegiance should be presumed to constitute a public oath ceremony.

---

[3] A "processing sheet" from plaintiff's immigration file bears the stamp "APPROVED," dated May 18, 1993.

[4] Applicants are required by regulation to sign a written form of the oath administered in a public ceremony.  *See* 8 C.F.R. § 337.1 (2007).

[5] As an administrative matter, CIS must advise the applicant of upcoming ceremonies and schedule the applicant to attend one.  *See* 8 C.F.R. § 337.7; *see also Langer v. McElroy*, No. 00 Civ. 2741(RWS), 2002 WL 31789757, at *1 (S.D.N.Y. Dec. 13, 2002).

Plaintiff commenced this action in October 2003; over a decade after CIS's approval of Plaintiff's naturalization application.  Plaintiff's complaint seeks an order requiring CIS: (1) to issue him a certificate of naturalization; or, alternatively, (2) to fully adjudicate his naturalization application, *nunc pro tunc*, as of May 18, 1993.

After Plaintiff commenced this action, CIS reviewed his administrative file to determine whether he remained eligible to naturalize.  In the course of its review, CIS learned that Plaintiff was no longer eligible because, in contravention to 8 U.S.C. § 1427(a), Plaintiff had resided outside of the Untied States prior to being admitted for citizenship.  Accordingly, CIS reopened Plaintiff's application and denied it in 2005.  Plaintiff did not seek administrative review of that decision.

The Government now claims that this Court lacks subject matter jurisdiction on the grounds that: (1) the Complaint is moot; and (2) Plaintiff failed to exhaust administrative remedies by not administratively appealing the denial of his naturalization application.  The Government also argues, on the merits, that Plaintiff is not entitled to a certificate of naturalization because –- not having taken a public oath –- he never naturalized.  The Government further argues that Plaintiff currently is ineligible for naturalization because he abandoned

his United States residence prior to his admission for naturalization.

## DISCUSSION

**I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION**

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  *See* Fed. R. Civ. P. 12(b)(1).  In resolving a motion to dismiss under Rule 12(b)(1), a district court may refer to evidence outside the pleadings.  *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).  A plaintiff asserting jurisdiction has the burden of proving by a preponderance of the evidence that it exists.  *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).

For the reasons explained below, this Court lacks jurisdiction on mootness and administrative exhaustion grounds.

**A.    The Judiciary's Limited Role In the Naturalization Process**

In 1990, Congress removed naturalization from the courts and vested the Attorney General with "sole authority to naturalize persons as citizens of the United States."  8 U.S.C. § 1421(a); *see also* Pub.L. No. 101-649, Title IV, 104 Stat. 4978, 5038-48 (Nov. 29, 1990).  District courts generally may intervene in the naturalization process in only two specific

instances. *See Langer*, 2002 WL 31789757, at *1. First, if CIS fails to render a decision upon an application within 120 days of the applicant's naturalization examination, the applicant may apply to the district court to conduct a *de novo* hearing on the application, and the court may then either determine the matter for itself or remand to CIS with appropriate instructions. *See* 8 U.S.C. § 1447(b); 8 C.F.R. § 310.5 (2007). Second, if CIS denies a naturalization application -- and that denial has been confirmed after an administrative appeal -- the applicant may seek *de novo* review in the district court. *See* 8 U.S.C. § 1421(c).

**B.   The Complaint Is Moot**

Federal courts may decide only "live" cases or controversies. *See* U.S. Const., Art. III; *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3 (1964); *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 647 (2d Cir. 1998). A civil action becomes moot if at any stage in the litigation the "case or controversy" requirement is not met. *See, e.g., Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997).

Here, Plaintiff's demand that CIS issue him a naturalization certificate was rendered moot when CIS re-adjudicated Plaintiff's naturalization application and denied it. Absent an approved naturalization application, Plaintiff is not eligible to naturalize, much less entitled to receive a

certificate of naturalization.  Regardless of whether a live case or controversy may have existed at the time the action was filed, *but cf.* Part I.D *infra*, there no longer is one.[6]

Plaintiff erroneously relies on 8 U.S.C. § 1447(b) -- and a line of cases interpreting it -- to assert that this Court acquired exclusive jurisdiction over his naturalization application at the time he commenced this action.  More to the point, Plaintiff argues that in light of my purportedly exclusive jurisdiction, CIS's subsequent adjudication of Plaintiff's naturalization application is a legal nullity, and thus has no bearing on the instant action.

As explained above, § 1447(b) provides a vehicle for aliens to seek judicial review of a pending naturalization application where CIS has not made a determination on the application within 120 days of the alien's naturalization examination.  *See* 8 U.S.C. § 1447(b).  Beginning with the Ninth Circuit's unanimous *en banc* decision in *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004), several courts have interpreted this provision as conferring district courts with *exclusive* jurisdiction over pending naturalization applications.  *Id.* at 1164; *accord United States v. Zaranska*, 400 F. Supp. 500, 502-04 (E.D.N.Y. 2005);

---

[6] For the reasons explained in the merits section below, summary judgment in the Government's favor would have been warranted had CIS not re-adjudicated Plaintiff's application.  Thus, Plaintiff was not prejudiced by any delay in this action.

*Castracani v. Chertoff*, 377 F. Supp. 2d 71, 73-75 (D.D.C. 2005); *Pichardo-Martinez v. Ashcroft*, 299 F. Supp. 2d 1043, 1046 (D. Ariz. 2005).

Other courts, however, have held to the contrary. *See, e.g., Kia v. INS*, 175 F.3d 1014 (4th Cir. 1999) ("[T]he INS's denial of naturalization shortly after Kia filed suit mooted the case and deprived the [district] court of jurisdiction.") (unpublished); *Perry v. Gonzales*, 472 F. Supp. 2d 623, (D.N.J. 2007) (holding that action filed under § 1447(b) was rendered moot where CIS denied pending naturalization application); *Al-Saleh v. Gonzales*, No. 06 Cv. 604 (TC), 2007 WL 990145, at *2 (D. Utah Mar. 29, 2007) (holding that district court and CIS had concurrent jurisdiction to adjudicate naturalization application).

This Court need not -- and does not -- resolve the issue of whether § 1447(b) confers district courts with exclusive or concurrent jurisdiction, as this Court never acquired jurisdiction under that provision in the first place. CIS approved Plaintiff's application on the same day he was interviewed, May 18, 1993. CIS apparently failed to schedule Plaintiff's public oath ceremony; CIS did not fail to make a decision on the application, which is the only basis for invoking the Court's jurisdiction (exclusive or otherwise) under § 1447(b).

- 9 -

**C.    Plaintiff Failed to Exhaust Administrative Remedies**

Generally, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938).  Exhaustion is required when specified by statute.  *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion is required.").  Here, 8 U.S.C. § 1447(a) demands that a naturalization applicant first seek administrative review of an unfavorable naturalization determination before turning to the district courts for judicial review.

Because I conclude that CIS was not divested of jurisdiction over Plaintiff's naturalization application, to the extent he now seeks to challenge CIS's denial of the application on the basis of any agency error, he was required to administratively appeal that decision.[7]  By not doing so, Plaintiff failed to exhaust administrative remedies and cannot now challenge CIS's decision to deny his application in this Court.

---

[7] For example, to the extent Plaintiff may claim that CIS erred by not scheduling Plaintiff's oath ceremony, or erred by not deeming his written oath as sufficient under the circumstances, Plaintiff was required to fully vet those issues administratively.

### D. The Remaining Jurisdictional Provisions Relied Upon By Plaintiff Do Not Confer This Court With Jurisdiction

Apart from 8 U.S.C. § 1447(b), Plaintiff seeks to invoke four additional bases for jurisdiction: 5 U.S.C. §§ 701 *et seq.* (the Administrative Procedure Act ("APA")); 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1332 (diversity jurisdiction); and 8 U.S.C. § 1329.  However, none of these provisions confer the Court with jurisdiction.

To begin with, 8 U.S.C. § 1329 applies only to actions *brought* by the United States; it expressly does not provide a basis for jurisdiction in actions "*against* the United States or its agencies or officers.  *See* 8 U.S.C. § 1329 (emphasis added); *Reno v. American-Arab Anti-Discrimination Committee*, 524 U.S. 471, 477 n.4 (1999).  Similarly, the diversity of citizenship statute, 28 U.S.C. § 1332, does not provide a basis for suing the United States or its agencies or officers acting in their official capacity.  *See Texas v. ICC*, 258 U.S. 158, 160 (1922).

Nor does jurisdiction lie under the APA alone, or in conjunction with the federal question statute, 28 U.S.C. § 1331.  As noted above, the Immigration and Naturalization Act itself provides only two points in the naturalization process in which the Court may intervene -- neither of which pertains to Plaintiff's case.  In any event, even if this Court had jurisdiction under the APA and/or federal question statute when

the case commenced, the Court was divested of jurisdiction on mootness and exhaustion grounds, for the reasons explained above.[8]  *Cf. Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) (APA review applies only to "final" agency action; not to intermediate agency rulings).

## II. ALTERNATIVELY, THE COURT GRANTS SUMMARY JUDGMENT TO THE GOVERNMENT

Summary judgment in the Government's favor would be warranted in any event.  To be sure, Plaintiff's situation is sympathetic.  He complied with all of the naturalization requirements except the final one, *i.e.* taking an oath in a "public ceremony."  *See* 8 U.S.C. § 1448.  Making matters worse, Plaintiff's failure to take the public oath may partially (if not largely) be the fault of CIS, which apparently failed to schedule Plaintiff for a ceremony.

However, Congress has left no room for such considerations to make a difference in this case.  The naturalization requirements at issue here -- *i.e.*, the public oath ceremony and the applicant's continuous residence in the United States until that time -- are statutorily mandated.  *Cf. INS v. Pangilinan*, 486 U.S. 875, 884 (1988) ("An alien who seeks political rights as a member of this Nation can rightfully obtain them only upon

---

[8] The same is true under 28 U.S.C. § 1361, the Mandamus Act, which applies only where the relief sought is non-discretionary and has been administratively exhausted.  *See, e.g.*, *Keane v. Chertoff*, 419 F. Supp. 2d 597, 599 (S.D.N.Y. 2006).

terms and conditions specified by Congress." (quoting *United States v. Ginsberg,* 243 U.S. 472, 474 (1917))); *Chiaramonte v. Immigration and Naturalization Service,* 626 F.2d 1093, 1100 (2d Cir. 1980) ("The regulation of immigration is a matter entrusted to Congress, and we are not free to substitute our judgment for that of the national legislature merely because the statutory scheme dictates a severe or unfortunate result in a particular case." (internal citations omitted)).

The fact that Plaintiff signed a written oath of allegiance is insufficient, as a matter of law, to meet the requirement of a public oath ceremony.  *See Tovar-Alvarez v. U.S. Att'y General*, 427 F.3d 1350 (11th Cir. 2005) (denying petitioner's claim that he became naturalized upon signing an oath of allegiance in the presence of an INS officer during petitioner's naturalization interview); *Abiodun v. Gonzales*, 461 F.3d 1210 (10th Cir. 2006) ("Signing an oath during the [naturalization] application process does not satisfy the "public ceremony" requirement . . . ."); *Okafor v. Gonzales*, 456 F.3d 531 (5th Cir. 2006) (to same effect).

Because Plaintiff did not naturalize in 1993, and because he admittedly abandoned his United States residence sometime thereafter, he is no longer eligible to naturalize.  Indeed, it is precisely for this reason that Plaintiff now requests *nunc*

*pro tunc* relief[9] in the form of an order requiring CIS to (re)adjudicate his application as of May 18, 1993.

The Court declines to grant such relief, as it would effectively operate to end run an applicant's statutory requirement to continuously reside in the United States until the time of his admission for citizenship.  *See* 8 U.S.C. § 1421(d) ("A person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this subchapter *and not otherwise.*") (emphasis added); *see also INS v. Pangilinan*, 486 U.S. 875, 883-85 (1988) (holding that lower court erred by affording equitable relief in naturalization context where the remedy was in contravention to Congress's expressed intent).  Although CIS may be partially to blame for not scheduling Plaintiff's public oath ceremony, Plaintiff bears at least some of the responsibility.  He is the one who abandoned his United States residence and was, at a minimum, statutorily on notice that the naturalization process was not complete until he took a public oath and received a certificate of naturalization.

---

[9]  *Nunc pro tunc*, literally "now for then," allows a court sitting in equity to deem an action to have been taken as of a time when it should have been taken, but was not due to circumstances not attributable to the unreasonable delay of the party seeking relief.  *Mitchell v. Overman*, 103 U.S. 62, 65 (1881).

## CONCLUSION

For the forgoing reasons, the Government's motion to dismiss, or in the alternative, for summary judgment, is GRANTED.  Plaintiff's motion is DENIED.  The Clerk of the Court is directed to close the case.

**SO ORDERED:**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:   New York, New York
         July 5, 2007